**KUHN v. CIVIL AERONAUTICS BOARD.**

No. 10424.

United States Court of Appeals
District of Columbia Circuit.

Argued April 11, 1950.

Decided June 19, 1950.

---

[1]. In fact, all of the co-owners of two of the properties at the time of the partnership contract were not parties thereto.

Mr. George A. Smith, Atlanta, Ga., of the Bar of the Supreme Coutr of Georgia, pro hac vice, by special leave of Court, with whom Messrs. E. Smythe Gambrell and W. Glen Harlan, Atlanta, Ga., were on the brief, for petitioner. Mr. Richard W. Galiher, Washington, D. C., also entered an appearance for petitioner.

Mr. William D. McFarlane, Special Assistant to the Attorney General, Department of Justice, with whom Assistant Attorney General Herbert A. Bergson, and Messrs. Emory T. Nunneley, Jr., General Counsel, Civil Aeronautics Board, and O. D. Ozment, Attorney, Civil Aeronautics Board, Washington, D. C., were on the brief, for respondent.

Before EDGERTON, PRETTYMAN and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

This is an appeal from an order of the Civil Aeronautics Board suspending petitioner's pilot license for forty days.[1] The proceeding below arose out of a collision between petitoner's aircraft (an Eastern Airlines DC-4) and a Universal craft on December 19, 1946, near Aberdeen, Maryland. No serious injuries resulted to any of the persons on board, but there was extensive damage to both planes. Pursuant to 49 U.S. C.A. § 582, the Board ordered an investigation of the accident and public hearings were held before eight of the Board's safety

1. Our authority to review such orders rests upon 49 U.S.C.A. § 646.

experts. The evidence introduced at that hearing was subsequently made the stipulated record in the suspension proceeding. The Board's final order, which is before us now for review, was based upon (1) a finding that petitioner had been careless in failing to overcome the visual deficiencies of his craft and in failing to maintain a proper lookout; (2) a finding that petitioner had violated § 60.103(d) of the Civil Air Regulations, known as the proximity rule.

In addition to challenging these two findings on the ground that they are not supported by substantial evidence, petitioner contends (1) the Board's finding that petitioner failed to maintain a proper lookout was invalid because he was given no notice that such issue was to be tried; (2) the Initial Decision of the Board was not made by the person who presided at the taking of evidence. We will first examine the procedural contentions.

(1) Petitioner would have us declare the Board's order void because it was in good part based on a finding allegedly not within the scope of the complaint, viz., failure to maintain a proper lookout.[2] He claims that, because he was unaware that such an issue was in the case, he joined in a stipulation of record immediately after the complaint was issued. The inference is that if he had been apprised of such issue, he would not have joined in the stipulation and would have introduced evidence bearing on the subject.

■ Although petitioner insists that the allegations in the complaint do not encompass the lookout issue, we do not think it necessary to decide that question. The whole thrust of modern pleading is towards fulfillment of a notice-giving function and away from the rigid formalism of the common law.[3] It is now generally accepted that

2. The complaint reads as follows:
"Plaintiff brings this action pursuant to the provisions of the Civil Aeronautics Act of 1938, as amended, 52 Stat. 973, 49 U.S.C. 401 et seq. and alleges that:

"I. Defendant, during all times mentioned in this Complaint was the holder of Airline Transport Pilot Certificate No. 5896.

"II. Defendant, on or about December 19, 1946, piloted, as Captain in command, a civil aircraft identified as NC-88813 on Eastern Air Lines regularly scheduled flight #605 out of Newark, New Jersey, bound for Miami, Florida, and deviated from the route authorized in that the aircraft was flown off and to the left of Amber Airway No. 7 in the vicinity of Aberdeen, Maryland, contrary to the provisions of Section 61.731 of the Civil Air Regulations.

"III. Defendant, on the flight identified in paragraph II of this Complaint, in the vicinity of Aberdeen, Maryland, failed to alter the course of his aircraft and give way to the right upon overtaking a Universal Airlines DC-3 aircraft, contrary to the provisions of Section 60.103(c) (3) of the Civil Air Regulations.

"IV. Defendant, on the flight identified in paragraph II of this Complaint, flew his aircraft within 500 feet of a Universal Airlines aircraft in the vicinity of Aberdeen, Maryland, when no prior arrangements had been made with the pilot of the other aircraft for flight in

such close proximity, contrary to the provisions of Section 60.103(d) of the Civil Air Regulations.

"V. Defendant, by virtue of the facts alleged in paragraphs II, III and IV of this Complaint, and by colliding with the overtaken aircraft in the vicinity of Aberdeen, Maryland, operated an aircraft in a careless and reckless manner so as to endanger the lives and property of others, contrary to the provisions of Section 60.101 of the Civil Air Regulations.

"Wherefore, Plaintiff requests that any airman certificate held by Defendant be suspended or revoked. Dated this 5th day of March, 1947."

3. See 2 Moore's Federal Practice 1607–10, 1618 (1948); Clark, Code Pleading 30 (1928) (" * * * we have spent altogether too much thought over the danger of surprising a defendant. If his case is prepared at all adequately he will not be surprised. Our solicitude for him will simply result in giving him opportunities to delay the case and harass his opponent. The main purpose of the pleadings should therefore be to give the trial court a proper understanding of the case.").

Rule 15(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., demonstrates the tenor of modern practice: "Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by *express or implied consent of the parties*, they shall

there may be no subsequent challenge of issues which are actually litigated, if there has been actual notice and adequate opportunity to cure surprise.[4] If it is clear that the parties understand exactly what the issues are when the proceedings are had, they cannot thereafter claim surprise or lack of due process because of alleged deficiencies in the language of particular pleadings. Actuality of notice there must be, but the actuality, not the technicality, must govern.

There can be no doubt that this is a case where petitioner had actual notice that the lookout issue was involved. Thus, the manner and sufficiency of petitioner's lookout was thoroughly examined at the investigation hearing. The initial hearing, at which additional evidence could have been introduced, was waived by him; instead, he joined in a stipulation of record composed of the testimony at the investigation hearing. It was on the basis of this stipulated record that the Hearing Examiner recommended suspension of petitioner's license. Although the Initial Decision contained no specific finding on the lookout issue,[5] it was discussed at some length and the observation was made that "Defendant's lack of precaution in maintaining an increased vigilance at that time appears inexcusable." Certainly, at that point, if not sooner, petitioner had notice. That he acted upon such notice is indicated by the fact that, in his appeal to the Board, he took specific excep-

tion to the Examiner's comments on the lookout issue. He steadfastly insisted that there was no proof that he "did not take the proper precaution or that he did not increase his vigilance immediately prior to the accident"; that the evidence demonstrated that he had provided a "vigilant and effective lookout." When the Board sustained the Examiner's decision, petitioner filed a petition for reconsideration, in which he again discussed the lookout problem. Nevertheless, the Board reaffirmed its prior decision. This time, however, it made a specific finding that the collision was due in whole or in part to petitioner's failure to maintain a proper lookout.

Since it is apparent that petitioner had actual notice, the only possible ground for reversal of the Board's decision would be a showing of lack of opportunity to introduce additional evidence after notice was brought home to him. In other words, there must be a showing that petitioner was prejudiced by whatever delay or informality there may have been in the notice received by him. He has not succeeded in making such a showing. If there was actual prejudice resulting from the dearth of evidence on the lookout issue in the stipulated record, there was ample opportunity to remedy the defect. Petitioner could have invoked Rule 97.27 of the Board's "Rules of Practice Governing Safety Cases," which provides that a petition for rehearing or reconsideration

be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but *failure so to amend does not affect the result of the trial of these issues * *.*" (Emphasis supplied.)

The applicability of that rule, or its rationale, to an administrative proceeding where there is even less attempt at formalism follows *a fortiori.*

4. See National Labor Relations Board v. Mackay Co., 1938, 304 U.S. 333, 350, 58 S.Ct. 904, 82 L.Ed. 1381; Consolidated Edison Co. v. National Labor Relations Board, 1939, 305 U.S. 197, 228, 59 S.Ct. 206, 83 L.Ed. 126; United States v. Pierce Auto Lines, 1946, 327 U.S. 515,

525, 66 S.Ct. 687, 90 L.Ed. 821; National Labor Relations Board v. Air Associates, 2 Cir., 1941, 121 F.2d 586, 591.

5. The Hearing Examiner apparently felt that the duty to maintain a proper lookout was encompassed by the broader duty owed by the pilot of an overtaking airplane. He made a finding on that point and, in his discussion thereof, dwelt at considerable length on the lookout issue. The Administrative Procedure Act, 5 U.S.C.A. § 1007(b), merely states that "all decisions (including initial, recommended, or tentative decisions) shall become part of the record and include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record; * * *." The Initial Decision did include such findings and reasons therefor, as indicated.

of the Board's order may include a request that further evidence be taken.[6] His failure to take advantage of that rule would seem to indicate that he was quite content to try his case on the evidence already introduced at the investigation hearing and made the stipulated record. At all stages, the lookout issue was argued solely on the merits, no mention being made of surprise, prejudice, or the wish to introduce additional evidence.

Our concern lest an individual's rights be invaded on a ground as to which he had no notice has caused us to describe the events below in some detail. We must recognize, however, that courts have been reluctant to lay down rules which would unduly formalize the administrative process and disregard the actualities of unfolding litigation. It seems to us that that very reluctance requires a corresponding vigilance on the part of the agencies themselves for the rights of parties called before them. While we do not think this case reveals a breach of the duty to give adequate notice, the agencies should scrupulously avoid even approaching the limits beyond which violations of due process lie.

■ (2) Petitioner contends that the Board violated §§ 5(c) and 8(a) of the Administrative Procedure Act[7] because its Initial Decision was not rendered by the officer who presided at the reception of evidence. We disagree. When the parties appeared in the suspension proceeding, they agreed to accept the transcript of evidence introduced in the accident investigation hearing as the stipulated record. That transcript comprised the evidence received at the suspension proceeding. It was the presiding officer at the latter proceeding who received the evidence and it was he who handed down the Initial Decision.

■ (3) It remains for us to determine whether the Board's findings are supported by substantial evidence.[8] The facts included in the stipulated record may be summarized as follows: Each crew contends its plane was flying down the airway and that the other craft was crossing the airway and hence was responsible for the collision. It seems clear, however, that while the Universal pilot was unaware that other aircraft might be using the same airway, petitioner possessed information sufficient to alert him to the fact that he would overtake the other plane somewhere near the point of collision. The central question posed by the Board and resolved against petitioner was whether he "could and should have seen the DC-3 in time to have avoided the collision." This statement of the issue accords with conventional tort law, its purpose being to ascertain whether petitioner acted as a reasonable man would have under such hazardous circumstances. In holding that he did not satisfy the proper standard of care, the Board focused its attention on whether or not petitioner had done all he "could or should" to overcome the visual deficiencies of his craft. According to petitioner, his view of the approaching DC-3 was obscured by a windshield post at his left and he could not possibly see around it at the particular angle of approach. It would seem that blind spots or visual deficiencies such as these are almost inevitable in any vehicle requiring structural supports. Giv-

6. The pertinent part of the rule reads: "If the petition be to take further evidence, the nature and purpose of the new evidence to be adduced must be briefly stated and the reasons why such evidence was not presented at the time of the prior hearing must be stated." A copy of these rules accompanied the complaint in this case and was made part of the transcript of record filed with this court.

7. The pertinent part of § 5(c), 5 U.S.C.A. § 1004(c), reads: "The same officers who preside at the reception of evidence pursuant to section 1006 of this title shall make the recommended decision or initial decision required by section 1007 of this title except where such officers become unavailable to the agency * * *." § 8(a), 5 U.S.C.A. § 1007(a), provides: "In cases in which the agency has not presided at the reception of the evidence, the officer who presided * * * shall initially decide the case or the agency shall require (in specific cases or by general rule) the entire record to be certified to it for initial decision * * *."

8. Under 49 U.S.C.A. § 646(e), the Board's findings of fact are conclusive, if supported by substantial evidence.

en such blind spots, it was incumbent upon petitioner to do his utmost to overcome them by moving his head or body from time to time, just as the driver of an automobile copes with the many obstructions to his view. In addition, despite petitioner's awareness of impending danger, no effort seems to have been made to put the co-pilot, who was seated on the right, on other than the customary lookout. But even if the co-pilot had been specially alerted, it would not have eliminated petitioner's responsibility for the area peculiarly within his field of vision—the left—where the collision took place. We are unable to say that the Board's inferences from these facts—from its knowledge of the structure of the plane and its visual deficiencies, from an appraisal of the visibility that day, the respective angles of approach and speeds—were not supported by substantial evidence. Although it may have been difficult for petitioner to fulfill his obligation, there was sufficient warrant for the Board's finding that he was careless under the circumstances.

■ (4) Since we do not disturb the Board's finding that petitioner operated his craft carelessly, there is no need to consider whether or not the Board interpreted its proximity rule properly. The finding as to careless operation is sufficient basis for the order of suspension.

The order of the Board is
Affirmed.