Charles J. SCHWARTZ, Plaintiff,

v.

**SECRETARY OF the TREASURY et al.,**
**Defendants.**

**Civ. A. No. 699–72.**

United States District Court,
District of Columbia.

Oct. 5, 1973.

Edward L. Merrigan, Washington, D. C., for plaintiff.

Harold H. Titus, Jr., U. S. Atty., for the District of Columbia, Arnold T. Aiken, and J. Michael McGarry, Asst. U. S. Attys., Civil Div., Washington, D. C., for defendants.

———◆———

## MEMORANDUM OPINION AND ORDER

FLANNERY, District Judge.

Plaintiff, Charles J. Schwartz, seeks a declaratory judgment and mandatory injunction against defendants, the Secretary of the Treasury, the Commissioner of Internal Revenue, and the Chairman and Commissioners of the United States Civil Service Commission, fixing, declaring and determining his right as a Veterans' Preference civil service employee of the United States to be restored to the position in the Brooklyn, New York office of the Internal Revenue Service from which he was suspended on December 9, 1964, and removed on January 8, 1965.

Plaintiff and defendants each filed Motions for Summary Judgment, and defendants filed a Motion to Dismiss in the alternative. Both parties advised the Court that there is no genuine issue as to any material fact and submitted statements pursuant to Local Rule 9(h). The Court has considered the transcript of the administrative proceedings and the memoranda submitted in support of these motions and in opposition thereto and has concluded that there are no genuine issues of fact that require a trial on the merits, that plaintiff's Motion for Summary Judgment should be granted, and that defendants' Motion for Summary Judgment and Motion to Dismiss should be denied for the reasons set forth below.

Charles J. Schwartz, the plaintiff in this action, entered the service of his country during the Second World War as a combat infantryman. Although seriously wounded in Normandy, he was returned to combat duty until he was honorably discharged in 1945. For a period of 15 years prior to December, 1964, plaintiff was a Veterans' Preference civil service employee of the United States employed by the Internal Revenue Service as an Internal Revenue Agent. In 1964, Albert Goldstein, an accountant-lawyer in New York City, informed the United States Attorney for the Southern District of New York that he personally had paid cash bribes to a number of Internal Revenue Agents, including plaintiff, in return for favorable audits of his clients' tax returns. On or about November 22, 1964, plaintiff was escorted from his office by two Internal Revenue Service Inspectors to the United States Attorney's Office in New York. An Assistant United States Attorney informed plaintiff that he was charged with a serious crime and he was then confronted by Goldstein, his accuser. That same day plaintiff consulted with his attorney, who was at the time involved in other litigation. Plaintiff was advised not to answer any questions until his attorney was free to accompany him. On the following day, November 23, 1964, a criminal complaint was filed against plaintiff in the Southern District of New York. Also on November 23, 1964, plaintiff was questioned by two Internal Revenue Service Inspectors in the absence of his attorney concerning his connections with Goldstein. At this interview plaintiff was advised of his Fifth Amendment right to remain silent and when asked whether he had received any

money from Goldstein, plaintiff refused to answer because "[t]his goes to the crux of the whole matter, the original accusation . . . and I feel . . . consultation for legal advice is necessary." Transcript of Administrative Proceedings, at 307. At all subsequent stages of the administrative proceedings plaintiff had the benefit of counsel and unequivocally affirmed his innocence.

On December 1, 1964, plaintiff received a written Notice of Proposed Adverse Action—a notice of both suspension and removal—based on two charges, one involving the acceptance of a bribe, the second concerning the failure to report the offer of a bribe.[1] Plaintiff was suspended for a period of 30 days beginning on December 9, 1964, and removed on January 8, 1965. Plaintiff appealed his removal to the Civil Service Commission Regional Office in New York, but all action on that appeal was suspended pending disposal of the criminal charges against him. An indictment was returned against plaintiff in October, 1965, which remained pending until the government filed a *nolle prosequi* on June 14, 1968. In the last two months of 1968, a hearing was held on plaintiff's administrative appeal. His suspension and removal were affirmed and plaintiff again appealed, this time to the Civil Service Commission Board of Appeals and Review. On August 25, 1969, almost five years after plaintiff had received a Notice of Proposed Adverse Action, the Board sustained his removal. Being without the necessary financial means to bring an action in this Court, plaintiff appealed to his union to prosecute this action on his behalf, which it finally agreed to do two and a half years later.

This Court has jurisdiction of this action under 28 U.S.C. § 1331 and is empowered to render a declaratory judgment herein under the provisions of 28 U.S.C. § 2201. *See, e. g.,* Meehan v. Macy, 129 U.S.App.D.C. 217, 392 F.2d 822 (1968); Weinberg v. Macy, 124 U.S.App.D.C. 1, 360 F.2d 816 (1965); Massman v. Secretary of Housing & Urban Development, 332 F.Supp. 894 (D.D.C.1971). The Court is not impressed by the contentions of the defendants that jurisdiction is exclusively in the United States Court of Claims or that plaintiff has failed to join the proper parties, nor is the Court persuaded that plaintiff's suit is barred by laches. *See* Powell v. Zuckert, 125 U.S.App.D.C. 55, 366 F.2d 634 (1966).

The Court recognizes that in employee adverse action litigation such as this, it is engaged in limited review and that *its* determination *is* based upon the agency record submitted to it. The function of the Court is to review the record and determine whether there has been procedural error, whether there is substantial evidence to support the agency action, or whether the action is in some manner otherwise arbitrary or capricious. Polcover v. Secretary of the Treasury, 477 F.2d 1223, 1226, 1227 (D.C.Cir. 1973); *see, e. g.,* Moore v. Administrator, 475 F.2d 1283 (D.C.Cir. 1973); Adams v. Laird, 136 U.S.App.D.C. 388, 420 F.2d 230 (1969); Mendelson v. Macy, 123 U.S.App.D.C. 43, 356 F.2d 796 (1966).

Plaintiff raises numerous grounds in support of his motion for summary judgment. Since plaintiff's removal is found to have been achieved in violation of his Fifth Amendment rights, the Court need not raise or pass

---

1. "*Charge I: Acceptance of a Bribe*

Specification: On or about January 12, 1962, you accepted the sum of $250.00 from Mr. Albert M. Goldstein, an accountant of 4 E. 43rd Street, New York, New York, to influence your decision and action in your audit of the 1960 income tax return of his client . . . . .

*Charge II: Failure to Report the Offer of a Bribe*

Specification: You failed to report the offer of the bribe set forth in the specification to Charge I above."

on plaintiff's other arguments. The record indicates that on or about November 22, 1964, plaintiff was personally informed by an Assistant United States Attorney of the criminal charge against him. On the following day, plaintiff was interrogated by two Internal Revenue Service Inspectors concerning his connections with Albert Goldstein. On advice of counsel, plaintiff declined to answer any questions in the absence of his attorney. This refusal to answer became a significant factor in the administrative appeal of his removal. When plaintiff's case was before the New York Regional Office of the Civil Service Commission, the Regional Director concluded:

"Finally, we consider significant the appellant's refusal to respond to the questions asked of him by the IRS Inspectors at the interview with him held on November 23, 1964. His refraining from answering questions concerning matters of official interest to competent Treasury authority and directly related to his responsibility as a Revenue Agent does not comport with the actions of a person who considers himself innocent."

Transcript of Administrative Proceedings, at 53.

When plaintiff appealed to the Civil Service Commission Board of Appeals and Review, the Board concluded:

"With regard to the merits of the case, basically, the question is one of credibility  .  .  .  .

.  .  .  The Regional Office's reference to the appellant's refusal to respond to IRS official questions was not improper since it was made in connection with the issue of the appellant's credibility. It was right and reasonable for the IRS Inspectors to ask the appellant if he ever received any monies in connection with any audit made by him. Appellant's refusal to answer such questions without the presence of and consultation with counsel does raise a doubt as to the appellant's veracity with regard to any subsequent statement made by him concerning the same matter."

Transcript of Administrative Proceedings, at 10–11.

At the outset, it must be noted that plaintiff was not charged with insubordination or failure to answer questions in the Notice of Proposed Adverse Action issued by the Internal Revenue Service. Had this been the case a different result might follow here.[2] The Civil Service Commission, however, despite the fact that plaintiff was then the subject of a criminal investigation, considered plaintiff's refusal to answer as evidence of his credibility, as conduct that did not "comport with the actions of a person who considers himself innocent." Transcript of Administrative Proceedings, at 53.

The Regional Director was of the opinion and the defendants argue that plaintiff had no right to counsel at this stage of the proceedings and therefore that his refusal to answer was not justified. The defendants also make much of the fact that plaintiff at no time specifically asserted his Fifth Amendment right to remain silent. Assuming, although not deciding, that plaintiff had no right to counsel at the time of his interview, the Court believes that the use of plaintiff's silence as substantive evidence by the Civil Service Commission constituted an impermissible infringement of his constitutional privilege against self-incrimination. It is well settled that a claim of the privilege does not require any special combination of words. Quinn v. United States, 349 U.S. 155, 75 S.Ct. 668, 99 L. Ed. 964 (1955). In the absence of coun-

**2.** Chapter C–2, Section 2, Rule 23 of the Treasury Department's Personnel Manual provides:

"Giving Testimony: When directed to do so by competent Treasury authority, employees must testify or respond to questions (under oath when required) concerning matters of official interest."

The Court makes no judgment whether removal on this basis would have been proper.

sel, the decision of an accused to say nothing and terminate an interview has been held sufficient to indicate an implied reliance on the constitutional privilege. United States v. Allsenberrie, 424 F.2d 1209, 1215 (7th Cir. 1970). That plaintiff was acting on the advice of counsel reinforces the conclusion that plaintiff, albeit imperfectly, was exercising his Fifth Amendment right, since the reason for this advice could only have been that counsel was aware of the fact that anything plaintiff said might be used against him.

The use of plaintiff's refusal to answer questions as substantive evidence was a "penalty imposed . . . for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." Griffin v. California, 380 U.S. 609, 614, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106 (1965). In Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956), the Supreme Court held that a public school teacher could not be discharged merely because he had invoked the Fifth Amendment privilege when questioned by a congressional committee:

"In Ullmann v. United States, 350 U. S. 422, 76 S.Ct. 497, 100 L.Ed. 511, we scored the assumption that those who claim this privilege are either criminals or perjurers. The privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equivalent either to a confession of guilt or a conclusive presumption of perjury. . . . The privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances."

350 U.S. at 557–558, 76 S.Ct. at 640. While the courts are not and should not be in the business of removing and reinstating civil servants, the procedures undertaken by a government agency to remove employees must conform to the requirements of the law and respect an employee's constitutional rights. Since the effect of the use of plaintifff's refusal to answer by the Civil Service Commission was to discharge plaintiff for invoking his constitutional privilege, an act condemned by the Supreme Court in *Slochower,* plaintiff's removal cannot stand.

"[Plaintiff's] assertion of one constitutional right, his right to counsel, and his reliance upon another constitutional right, his right to remain silent when charged with crime, we think cannot be used against him substantively as an admission of guilt, for to do so would be to render the constitutional rights mere empty formalities devoid of practical substance."

Fagundes v. United States, 340 F.2d 673, 677 (1st Cir. 1965).

Since plaintiff's removal was achieved in violation of his constitutional rights, plaintiff is entitled to a declaratory judgment that his removal was invalid and he is entitled to an order directing that he be reinstated to his position of Internal Revenue Agent, GS-11, Internal Revenue Service, Brooklyn, New York as of January 8, 1965, the date of his unlawful removal, together with restoration of all rights, benefits and privileges that would have accrued from a continuity of service from the date of such unlawful removal to the present. Massman v. Secretary of Housing & Urban Development, 332 F.Supp. 894, 900 (D.D.C. 1971); Paroczay v. Hodges, 219 F.Supp. 89, 94, 96 (D.D.C.1963). Upon correction of the unlawful personnel action, plaintiff is entitled to an administrative settlement of his back pay claim for the period the unlawful removal action was in effect, such settlement to be in accordance with the provisions of the Back Pay Act, 5 U.S.C. § 5596 (1970). This order shall not be construed to constitute an award of a money judgment in favor of plaintiff.